

**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
(917) 546-7675 Fax
eml@msk.com

September 18, 2024

**VIA E-MAIL AND ECF (ALCarterNYSDChambers@nysd.uscourts.gov)**
Hon. Andrew L. Carter Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:   **Elliot McGucken v. Lonely Planet, Case No. 1:23-CV-04293-ALC-SLC – Lonely Planet Global's Response to McGucken's Request for Pre-Motion Conference**

Dear Judge Carter:

We represent defendant Lonely Planet Global, Inc. ("LPG") in the above-referenced case. We write in response to Plaintiff Elliot McGucken's[1] request for a pre-motion conference,[2] pursuant to Your Honor's Individual Rule 2.A. Plaintiff's pre-motion letter does not properly reflect the record or the law, and he should not be granted leave to file a motion for summary adjudication (which he seeks on all issues except for damages) for the reasons stated below.

### Plaintiff's Direct Infringement Claims are Subject to Estoppel

Plaintiff admits to his constructive awareness of the Hane Street account, and its distribution of several of his works via Shutterstock—including the image at issue—***before LPG ever licensed it.*** This fact prevents a ruling on direct liability in Plaintiff's favor. Plaintiff sat on his rights and waited for LPG (and others) to license and use his work before exploiting their ignorance for his own profit. As noted in LPG's prior letter, the evidence shows that this is Plaintiff's business: to make high-resolution images, with no visible watermarks, available to the public, and then wait until an innocent party makes use. With demands of 1000x a standard license fee under the shadow of the cost of litigation, even a large reduction of that amount in settlement is a windfall, especially in a volume business. Plaintiff's disingenuous use of the court system in the context here, where Plaintiff knew that innocent third parties would make use of the images (while he lied in wait), raises the exact type of claim that warrants estoppel in the eyes of the court. *See* ECF No. 72 at 3 (citing *DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497, 509 (S.D.N.Y. 2001), *aff'd* 11 Fed. Appx. 26 (2d Cir. 2001); and *Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-CV-0736, 2024 WL 3836075, at *2 (M.D. Tenn., Aug. 15, 2024)).

---

[1] To avoid any confusion, as Plaintiff has filed many lawsuits similar to the one at hand, LPG understands that there is only one Plaintiff in this case: Elliot McGucken. LPG is unfamiliar with any entity called Andy McGucken Photographer, LLC, as listed in opposing counsel's signature block.

[2] Plaintiff's Letter (ECF No. 73) both responds to LPG's own letter seeking a pre-motion conference (ECF No.72), and sets forth his own request for a pre-motion conference. In accord with the Court's rules, LPG will herein respond only to Plaintiff's affirmative request for a pre-motion conference. LPG will respond to Plaintiff's responses to LPG's affirmative arguments at the pre-motion conference and/or in the briefing on the merits.



**Contributory/Vicarious Copyright Infringement**

To succeed on a theory of "secondary copyright infringement, there must be the direct infringement of a ***third party***." *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 338 (S.D.N.Y. 2020) (emphasis added). Yet Plaintiff does not even attempt to prove an underlying direct infringement for which he claims LPG "is additionally secondarily liable." For the first time in this case, Plaintiff's letter to the Court points generically to "retailer vendors, such as Barnes & Noble and Amazon" as distributors and sellers of the Book, but Plaintiff does not specifically claim nor point to proof that these entities infringed his copyright; they are not defendants in this case, and Plaintiff has not made efforts to implead them as Does. For this reason alone, Plaintiff cannot make a showing of secondary liability. *Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 319 (S.D.N.Y. 2023) ("Without a showing of a direct copyright infringement, secondary liability cannot be maintained.").

Moreover, Plaintiff misrepresents the facts of this case further by stating that LPG never "acted to stop or limit the sale of the Infringing Book." This is not the test for contributory infringement, which requires LPG to *continue to supply* a product with a particular knowledge level. When LPG published the Book, it had no knowledge nor any reason to know that Plaintiff was the purported owner of the Image. The evidence in this case is clear that LPG cannot control the sale of books already in the hands of retailers. They are neither employees nor contractors. Indeed, upon receiving notice of this lawsuit—which was the first time LPG became aware of the alleged infringement—LPG published a new edition of the Book that excluded the Image, which typically induces retailers to remove and replace previous editions.

Likewise, on vicarious liability, Plaintiff cannot prove a financial benefit that is directly attributable to the use of a single image in the midst of a 672-page book containing 192 images. *See, e.g., Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 332 (S.D.N.Y. 2008). Plaintiff cannot show that LPG exercised control or supervision of these supposed third party infringers, as he must. If Plaintiff is going to prevail on these multi-element claims, he must establish all elements as a matter of law. His imprecise approach itself demonstrates that he knows he cannot meet the test to entitle him to summary judgment.

**Plaintiff Cannot Prove Willful Infringement**

The record is clear that LPG's alleged infringement was not willful. Lonely Planet licensed the Image from a reputable licensing platform (Shutterstock) in the ordinary course of its business. The facts are clear that the Book was published before this lawsuit was filed, and that Plaintiff provided no notice of the alleged infringement before filing. LPG could not stop distribution that had already occurred, and Plaintiff's claims to the contrary are unsupported.

As to the blog post, LPG has demonstrated that the blog post publication including the Image was the result of a technological error relating to a system migration. Plaintiff has no evidence to the contrary. All he has is empty argument that is insufficient to avoid summary judgment, much less win it.



**<u>Plaintiff Cannot Prove Violation of Section 1202.</u>**

To establish a violation of Section 1202 of the Digital Millennium Copyright Act (DMCA), Plaintiff must prove that LPG: (1) provided or distributed copyright management information ("CMI"); (2) knew that the CMI was false; and (3) acted with the intent to cause or conceal copyright infringement. *See Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018). As noted in documents filed in this District in a case before Judge Rearden, Plaintiff has stated repeatedly that any possible identifying information relating to Plaintiff would have been removed by the uploader (Hane Street) before LPG ever accessed the Image.

As Plaintiff has conceded, there *never* was any of his CMI on the Image when LPG licensed it via Shutterstock. Plaintiff's testimony is that anyone would just know that a generic image of a landscape would be his, but Plaintiff's self-flattery fails to establish mental state. Plaintiff's own admissions demonstrate that LPG had no way of knowing its attribution to Hane Street/Shutterstock was false. The Image did inadvertently reappear in a blog post shortly after the suit was filed due to an error in a software migration that resulted in the Image (along with the accompanying metadata) being restored from the trash, but there is no evidence that anyone was aware of the issue, nor that anyone had any intention to conceal the use from Plaintiff, as required. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 337, 338 (S.D.N.Y. 2019) (summary judgment for *defendant* where "[t]here is not even any evidence suggesting whether there was CMI on the Photographs when Defendants obtained them."). Plaintiff has no explanation as to why a party that obtains images from a reputable licensing platform would go to lengths to cover up a use that Plaintiff found before LPG was even aware of the issue, but after Plaintiff sued. The evidence as to LPG's mental state is clear and unrebutted. Accordingly, it is frivolous to suggest that as a matter of law, LPG had the mental state required to meet the double scienter test.

Plaintiff's arguments will fail on a motion for summary judgment. Indeed, most of the arguments appear to violate Rule 11 given their utter absence of proof; there can be no other reason for moving for summary judgment on issues that Plaintiff must know he cannot rebut. Plaintiff similarly moved for summary judgment in another matter involving this Image, and the court rejected them fully. Plaintiff should be cautioned of the consequence of running up fees with meritless positioning and should be required to identify specific, unrebuttable evidence giving him some basis for judgment as a matter of law before Plaintiff is permitted to make his motion.

Respectfully submitted,

Eleanor M. Lackman

EML/itl

20177305.1